505 A.2d 102

William L. SALVATORE et al.

v.

Brian Timothy CUNNINGHAM et al.

Kenneth Walter CUNNINGHAM, Jr. et al.

v.

Brian Timothy CUNNINGHAM et al.

No. 81, Sept. Term, 1985.

Court of Appeals of Maryland.

Feb. 26, 1986.

George W. Shadoan (Shadoan & Michael, on brief), Rockville, and Michael Marshall (Henry L. Belsky and Schlachman, Potler, Belsky & Weiner, P.A., on brief), Baltimore, for appellants.

James E. Gray (Thomas M. Goss, Joel H. Oleinik and Semmes, Bowen & Semmes, on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

We shall here hold that in a suit based upon lack of smoke detectors at the time of a tragic fire in Garrett County appellants have failed to state a cause of action.

We have here two suits arising out of the same incident with similar pleadings. They were consolidated in the Court of Special Appeals. The Court of Special Appeals, pursuant to Maryland Rule 1015 a, certified to us questions of law:

"1. On January 1, 1982, did Maryland common law recognize an implied warranty of habitability in connection with the rental of a fully equipped ski chalet for a single weekend?

"2. If so, is lack of a smoke detector in the chalet a breach of that warranty

a. as a matter of law, or

b. only if found, as a matter of fact, to render the premises unreasonably unsafe?"

We elected to consider the entire case. Hence, we issued a writ of certiorari prior to decision in the intermediate appellate court. In the view we take of the case the answer is found in Maryland Code (1957, 1981 Cum.Supp.) Art. 38A, § 12A.

Two suits were filed in the Circuit Court for Howard County arising out of a fire on January 1, 1982, at what was known as Seasons Four Chalet in Garrett County. The trial judge granted motions to dismiss in each case without leave to amend pursuant to Rule 2–322.[1] The basis was the failure to state a claim upon which relief could be granted.

We have said that in considering the sufficiency of a declaration on demurrer we are required to assume the truth of all material and relevant facts that are well pleaded as well as all inferences which reasonably can be drawn from those well-pleaded facts. *Tadjer v. Montgomery County*, 300 Md. 539, 542, 479 A.2d 1321, 1322 (1984);

---

1. The judge used the old term of demurrer.

*Schwartz v. Merchant's Mort. Co.*, 272 Md. 305, 308, 322 A.2d 544, 546 (1974); *Desser v. Woods*, 266 Md. 696, 698–99, 296 A.2d 586, 588 (1972). The same would be true of what we now call a motion to dismiss for failure to state a cause of action.

William L. Salvatore, individually and as personal representative of Patricia Ann Salvatore and also as father and sole guardian of Steven Philip Salvatore, and Stephen Derek Coster, personal representative of the estate of Robert Y. Coster, Jr., sued Brian Timothy Cunningham and Lynda Anne Cunningham. The declaration contained two counts; one was a negligence and survival action and the other was for the wrongful death of Patricia Anne Salvatore. Kenneth Walter Cunningham, Jr.; Linda Hughes Cunningham, individually and as mother and next friend of Mandy Hughes Cunningham, a minor child; Mary Ann Pierorazio; John Richard Coster; Edna Alvirta Isennock; Michael Scott Coster; JoAnn Coster, as mother and next friend of Erin Kathleen Coster; and State Auto Mutual Insurance Company also sued Brian Timothy Cunningham and Lynda Anne Cunningham for negligence and wrongful death. The allegations in the latter case are similar to those in the former. Hence, we shall repeat only the facts as set forth in the Salvatore case.

On January 1, 1982, at approximately 11:00 p.m. a fire destroyed Seasons Four Chalet owned by Brian Timothy Cunningham and Lynda Anne Cunningham. The building had been rented to Kenneth Cunningham "and the following people, who shared the chalet and occupied it at the time of the fire: Linda Hughes Cunningham, his wife; Mandy Hughes Cunningham, her daughter; Patricia Ann Salvatore, his sister; William L. Salvatore, his brother-in-law; Robert Y. Coster, Jr., his friend; Mary Ann Pierorazio; John Richard Coster, his friend; and Edna Alvirta Isennock." The chalet had been rented by these people for the New Year's holiday and, according to the declaration, "was not used by the occupants as a single family dwelling, nor was it used by the occupants as a two or three family

dwelling." It was further alleged that Brian Cunningham and his wife "rented said Seasons Four Chalet to the occupants as a temporary accomodation, not intended as a one, two or three family dwelling." The chalet was advertised as completely furnished and equipped except for linens. It had accommodations capable of sleeping twelve persons in three bedrooms and a loft. Seasonal weekly and weekend rates were set forth in the advertisements. The "advertisements indicate the Seasons Four Chalet was not intended as a one, two or three family dwelling." The chalet "did in fact sleep twelve persons in three closely grouped bedrooms and a loft ...." It contained a common kitchen, bathroom and living facilities for all occupants. It was alleged that it was not intended as a one, two, or three family dwelling.

All of the occupants retired by approximately 10:45 p.m. on the night in question. As indicated, a fire broke out at approximately 11:00 p.m. There was no smoke detector or fire alarm in the chalet. Patricia Ann Salvatore and Robert Y. Coster, Jr., perished as a result of the fire. Others were injured.

It was asserted that Brian Cunningham and his wife "were negligent in that they had a duty, pursuant to Article 38A, Section 12A ... to equip the chalet with a manual fire alarm system, and smoke detectors, but failed to equip the chalet with either device ...." It was further alleged that "they had a duty, pursuant to Maryland common law, to take reasonable care to not subject others to an unreasonable risk of harm, and to provide a reasonably safe premises for their tenants, and breached that duty by failing to equip the chalet with a smoke alarm system, fire alarm system, or similar warning system ...."

The trial judge (Kane, J.) found "the more persuasive authority supports the conclusion that there is no common law duty to install fire detection devices ...." Accordingly, he held "that the common law duty to maintain safe premis-

es for a tenant does not encompass the installation of fire detection devices."

Art. 38A, § 12A, as in effect at the time of the fire, provided in pertinent part:

"(a) *Smoke detector required in sleeping area; light signal for deaf or hearing impaired occupants; compliance by hotels and multifamily buildings.* —(1) Each sleeping area within all occupancies classified residential, as defined in Chapter 11 of the National Fire Protection Association Life Safety Code, 1976 Edition, shall be provided with a minimum of one approved smoke detector sensing visible or invisible particles of combustion installed in a manner and location approved by the Fire Prevention Commission. When activated, the detector shall provide an alarm suitable to warn the occupants. . . .

"(b) *One, two or three family dwellings.* —An occupant of a one, two or three family residential dwelling constructed prior to July 1, 1975 shall by July 1, 1982:

"(1) Equip each occupant's living unit with a minimum of one approved battery or AC primary electric powered smoke detector; and

"(2) Maintain the smoke detector."

The trial judge set forth the statute and then observed:

"It is, of course, the facts alleged which determine this Court's application and construction of this statute to the instant case. The facts alleged include the following: the premises, called the Seasons Four Chalet, was a completely furnished and equipped accommodation capable of sleeping twelve persons in three bedrooms and a loft. Furthermore, the chalet had three closely grouped bedrooms and a loft and contained common kitchen, bathroom and living facilities for all occupants. The Amended Declaration does not allege the date of construction of the chalet. With these facts noted, this Court may consider if they set forth a breach of the statute.

"This Court finds, upon consideration of these facts, that the Season Four Chalet was indeed a 'one, two, or

three family residential dwelling' within the meaning of subsection (b) of said section 12A. It is an axiom of statutory construction that 'A statute should be construed according to the ordinary and natural import of its language.' M.L.E. Statutes § 87. A building with closely grouped bedrooms and a loft with common areas and a sleeping capacity of twelve persons is a residential dwelling. Moreover, the presence of such common areas serving all dwellers, as alleged, indicates a dwelling constructed for one family. It is, of course, this premises' status as a one, two or three family dwelling which may preclude a finding of statutory duty pursuant to subsection (a) of said section 12A.

"As is evident from the Amended Declaration, Plaintiffs seek to distinguish the premises from a 'one, two or three family residential dwelling' by alleging that the premises were not intended to be used as such a family residential dwelling at the time of the fire. However, the statute does not set forth the intention of the parties as a criterion for classification. Consequently, it is the construction and configuration of the interior of the premises which must determine its classification and it is these criteria which compel the classification of these premises as a 'one, two or three family dwelling.'

"The fact missing from the Amended Declaration is the date of construction of the building. This Court finds that Plaintiff must allege the facts necessary to support a statutory duty breached and consequently must allege the date of construction so as to remove the premises from the provisions of subsection (b) of said section 12A.[2] It is, of course, a duty alleged by the operation of a statute read *in toto* which would give rise to a cause of action.

"In summary then, this Court finds Plaintiffs fail, as a matter of law, to allege facts which impose upon Defend-

---

**2.** In this Court the brief of the appellants states that they "do not contend the Chalet was constructed subsequent to July 1, 1975."

ants a duty to install fire detection devices. According to the facts alleged, Defendants have not breached any common law duty owed to Plaintiffs. Moreover, the Plaintiffs fail to set forth a breach of a statutory duty pursuant to the mandates of Md.Code Ann. Art. 38A § 12A by failing to allege facts which remove the one, two or three family residential dwelling from the delayed compliance requirements of subsection (b) of said section 12A. Thus, Plaintiffs have failed to allege a duty breached by Defendants and thus fail to state a cause of action. In that this Court sustained a Demurrer to the original Declaration and now shall sustain a Demurrer to the Amended Declaration, such Demurrer shall be sustained without leave to amend."

In the second case the trial judge referred to the opinion that he had handed down in the first case and reached a similar result.

Art. 38A, § 12A was originally enacted by Ch. 860 of the Acts of 1975. Section 2 of that chapter provided that with the exception of § 12A(b) of the original act, not applicable here, "the provisions of this Act do not apply to any residential building including hotels, apartments, and other multi-family dwellings constructed, or under construction, prior to July 1, 1975." Present subsection (b) was added by Ch. 667 of the Acts of 1981.

Chapter 11 of the National Fire Protection Association Life Safety Code, 1976 Ed., mentioned in § 12A(a) states in relevant part:

"11–1.3 Classification of Occupancy.

"11–1.3.1 Residential occupancies shall include all occupancies so classified in 4–1.6. They shall be classified in the following groups, subject to determination by the authority having jurisdiction.

"(a) Hotels....

"(b) Apartment Buildings....

"(c) Dormitories....

"(d) Lodging or Rooming Houses. Includes buildings in which separate sleeping rooms are rented providing sleeping accommodations for a total of 15 or less persons, on either a transient or permanent basis; with or without meals, but without separate cooking facilities for individual occupants, except as provided in (e).

"(e) 1- and 2-Family Dwellings. Includes dwellings in which each living unit is occupied by members of a single family, with rooms rented to outsiders, if any, not accommodating more than 3 persons."

Section 4–1.6, mentioned in § 11–1.3.1 states:

"Residential *(for requirements see Chapter 11 )*. Residential occupancies are ones in which sleeping accommodations are provided for normal residential purposes and include all buildings designed to provide sleeping accommodations.

" *Exception: Those classified under Institutional Occupancies.*

"Residential occupancies are treated separately in this *Code* in the following groups:

"(a) Hotels

     Motels

"(b) Apartments

"(c) Dormitories

     Orphanages for age 6 years and older

"(d) Lodging or rooming houses

"(e) 1- and 2-family dwellings"

We think the trial judge was correct when he said, after reference to the assertions in the declaration, that the chalet "was indeed a 'one, two, or three family residential dwelling' within the meaning of subsection (b) of said section 12A," that "the statute does not set forth the intention of the parties as a criterion for classification," but "it is the construction and configuration of the interior of the premises which must determine its classification ...." We further think he was correct in his conclusion from the description given in the declaration that this was a single family

dwelling. As a single family dwelling it follows that under § 12A(b) there was no obligation on the part of the owner as of the relevant date to install smoke detectors or other warning devices. We find the argument relative to a common law obligation to be without merit. If any common law obligation ever existed it was rooted out when the General Assembly passed Ch. 860 of the Acts of 1975 which by its terms exempted residential buildings erected prior to July 1, 1975 from any obligation to install smoke detectors.

JUDGMENTS AFFIRMED; APPELLANTS TO PAY THE COSTS.