[Cite as *Sorensen v. DeFranco*, 2013-Ohio-5829.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT L. SORENSEN, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-L-038** |
| ORLANDO DEFRANCO, et al., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 12 CV 000463.

Judgment: Affirmed.

*Earl F. Ghaster,* Kubyn & Ghaster, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellant).

*James T. Tyminski, Jr., Stephen M. Beaudry,* and *Holly Olarczuk-Smith,* Gallagher Sharp, Sixth Floor, Bulkley Building, 1501 Euclid Avenue, Cleveland, OH 44115 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Robert L. Sorensen, appeals from the April 8, 2013 judgment of the Lake County Court of Common Pleas, granting appellee, Orlando DeFranco's, motion for summary judgment.

{¶2} Fifty-nine-year-old Sorensen, a California resident, and 82-year-old DeFranco, an Ohioan, had been friends for 30 years. DeFranco, now deceased, was the owner of a home in Concord Township, Lake County, Ohio. Sorensen, a self-

described "beach bum," would stay at DeFranco's residence whenever visiting Ohio. DeFranco allowed Sorensen to borrow his car and never charged Sorensen any rent during his stay.

{¶3} On one occasion, Sorensen stayed at DeFranco's home while DeFranco vacationed in Las Vegas. Sorensen agreed to house-sit and watch DeFranco's two dogs, without compensation. On October 18, 2010, at around 6:00 p.m., Sorensen felt a chill in the air and turned on the furnace at the thermostat. The furnace had not been used since the previous spring.

{¶4} According to Sorensen, about an hour later, the house became too hot and he opened the front door for some fresh air. Around 10:45 p.m., Sorensen arose from lying on the couch and felt dizzy. He attributed his dizziness to low blood sugar due to his diabetic condition. He walked to the kitchen to get something to eat, passed out, fell, broke his left leg, and tore the medial meniscus of his left knee.

{¶5} When Sorensen came to, he realized he needed to get out of the house and began crawling. He vomited in the living room. Sorensen was able to call DeFranco's daughter, Elizabeth, who called 9-1-1. Sorensen crawled outside, but because it was too cold, he crawled back indoors.

{¶6} The fire department and paramedics arrived, finding Sorensen semi-conscious in the living room. First responders noticed a strong smell of natural gas and their eyes burned when they entered DeFranco's home. Positive readings for carbon monoxide were detected throughout the residence.

{¶7} Sorensen was transported to the hospital, treated for carbon monoxide poisoning, and underwent surgery on his leg. Sorensen's relationship with DeFranco

2

after the incident was not damaged. In fact, he later stayed with DeFranco's daughter while recovering.

{¶8} Although the fire report indicates that the furnace inspection showed a "deteriorated condition," no firemen could explain who made that statement or why it was made. The fireman who authored the report neither went in the basement, where the furnace was located, nor looked at the furnace. Two other firemen, who went in the basement, looked at the furnace and monitored it for carbon monoxide. They did not disassemble the furnace. Using helmet lights, they saw some darkness inside the furnace, which may have been soot. However, neither fireman was a furnace expert and could not comment on whether the furnace was well-maintained.

{¶9} The fire department never determined the cause of the carbon monoxide leak and never attributed it to a lack of furnace maintenance. No photographs of the furnace were taken. DeFranco was not charged in connection with the leak.

{¶10} According to DeFranco, he had a carbon monoxide detector mounted on his kitchen wall but the alarm did not sound because his son, Tom, did not replace the batteries. DeFranco was not aware that the detector was not working properly until after the incident at issue. DeFranco had the furnace newly installed when he moved into his home in 1992. It had been checked and inspected at various times. He never had any significant problems with the furnace. Besides air filters routinely replaced twice a year, DeFranco had the thermocouple wire replaced in 2000, and a new thermostat installed at another time.

{¶11} Just a few months before the incident, DeFranco's friend, Richard Zurbola, replaced the air filter. Zurbola did not notice any visible defects or deterioration of the

3

furnace at the time. DeFranco stated he had no reason to believe that there was anything wrong with his furnace or that it was going to leak carbon monoxide.

{¶12} As DeFranco was still in Las Vegas, his son hired Bryon McCroskey, a general handyman of McCroskey Remodeling & Repairs, to replace the furnace. According to McCroskey, he has installed approximately 300 to 400 furnaces during his career. A reveal of the exterior looked okay and it was not in bad shape. It took McCroskey an hour to take DeFranco's furnace apart in order to determine that it had a cracked heat exchanger which caused the carbon monoxide leak. Both DeFranco and Sorensen agreed that the carbon monoxide poisoning resulted from the cracked heat exchanger. McCroskey explained that the problem was not detectable by just examining the outside of the furnace, even during a routine inspection by a furnace company. Thus, McCroskey stated that a homeowner, like DeFranco, would not have known that his furnace had a cracked heat exchanger without taking the furnace apart.

{¶13} On February 22, 2012, Sorensen filed a complaint against DeFranco essentially claiming that DeFranco was negligent for failing to have his furnace professionally inspected annually with carbon monoxide testing and for failing to have an operable carbon monoxide detector in his home. DeFranco filed an answer on April 3, 2012.

{¶14} On December 18, 2012, DeFranco filed a motion for summary judgment arguing that Ohio case and statutory law does not impose a duty upon homeowners to have their furnaces inspected annually for carbon monoxide or to have a working carbon monoxide detector. Sorensen filed a brief in opposition, and submitted an affidavit and report from his expert, James Madden, a licensed professional engineer,

4

who opined that the incident was proximately caused by the negligent action and inaction of DeFranco. Madden opined that a potential cause of the carbon monoxide leakage was either a cracked heat exchanger and/or a leak through an un-taped flue pipe. By the time that Madden entered the case, however, DeFranco's old furnace had been scrapped and replaced with a new one. DeFranco subsequently filed a reply.

{¶15} Thereafter, DeFranco passed away from cancer. His counsel filed a suggestion of death on February 15, 2013.

{¶16} On April 8, 2013, the trial court granted DeFranco's motion for summary judgment. Sorensen timely appealed and asserts the following four assignments of error:

{¶17} "[1.] The trial court erred to the prejudice of Appellant by granting summary judgment in favor of the Appellee by requiring a corresponding statutory duty in order to maintain a negligence cause of action and ignoring the common law duties established by Ohio law.

{¶18} "[2.] The trial court erred to the prejudice of Appellant by granting summary judgment in favor of the Appellee when it failed to analyze and apply the common law duties of care between the parties.

{¶19} "[3.] The trial court erred to the prejudice of Appellant by granting summary judgment in favor of Appellee by holding that a defendant-homeowner cannot be charged with actual or constructive notice regarding CO emissions within the home.

{¶20} "[4.] The trial court erred to the prejudice of Appellant by granting summary judgment despite the presence of genuine issues of material fact regarding

5

whether the Appellee was negligent and breached his common law duties of care owed."

**{¶21}** We are called upon to determine whether Ohio law imposes a duty upon homeowners to have their furnaces inspected yearly with carbon monoxide testing and to have operable carbon monoxide detectors. For the reasons stated below, we find no such duty upon homeowners, and in this case, upon DeFranco. Thus, summary judgment was proper.

**{¶22}** This court recently stated in *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6:

**{¶23}** "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

**{¶24}** "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. Ashtabula No. 2002-A-0061,

2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 * * * (1996)." (Parallel citations omitted.)

{¶25} In his first assignment of error, Sorensen argues that the trial court erred in granting DeFranco's motion for summary judgment by requiring him to demonstrate a corresponding statutory duty in order to maintain a negligence cause of action and ignoring the common law duties established by Ohio law.

{¶26} "'To establish a claim for negligence, appellant must prove the following: "(1) that appellee owed a duty to appellant; (2) that appellee breached that duty; (3) that appellee's breach of duty directly and proximately caused appellant's injury; and (4) damages."' *McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, ¶29, citing *Wike v. Giant Eagle, Inc.*, 11th Dist. Portage No. 2002-P-0049, 2003-Ohio-4034, ¶14, quoting *Kornowski v. Chester Properties, Inc.*, 11th Dist. Geauga No. 99-G-2221, 2000 Ohio App. LEXIS 3001, *7 (June 30, 2000).

{¶27} "Under Ohio law, the existence of a duty depends on the injury's foreseeability. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77 * * *. 'The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. (Citations omitted).' *Id.* The foreseeability of harm generally depends on a defendant's knowledge. *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116,

7

119-120 * * *." (Parallel citations omitted.) *Masek v. Warren Redevelopment and Planning Corp.*, 11th Dist. Trumbull No. 2009-T-0059, 2010-Ohio-819, ¶16.

**{¶28}** "'The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability.' (Citation omitted.) *Studniarz v. Sears Roebuck & Co.*, 11th Dist. No. 2009-L-159, 2010-Ohio-3049, ¶18. 'The existence of a duty is "a question of law for the court to decide on a case-by-case basis."' (Citation omitted.) *Mack v. Ravenna Men's Civic Club*, 11th Dist. No. 2006-P-0044, 2007-Ohio-2431, ¶15." *Reddick v. Said*, 11th Dist. Lake No. 2011-L-067, 2012-Ohio-1885, ¶33.

**{¶29}** No Ohio case law or statute imposes a duty upon a homeowner to have his or her furnace professionally inspected and checked for carbon monoxide leakage annually and to have a working carbon monoxide detector. Thus, DeFranco, as a homeowner, did not have a duty to have his furnace inspected annually for carbon monoxide and to maintain an operable carbon monoxide detector in his home. The record reveals, through the testimony of two firemen and McCroskey, that carbon monoxide testing is not even part of routine, basic furnace inspections. The court mentioned numerous facts in its April 8, 2013 judgment entry, one of which included mention of the fire report. The facts establish that the harm to Sorensen was not foreseeable. DeFranco had no knowledge that his furnace had a cracked heat exchanger (the undisputed cause of the leak) which was only evident after the furnace was taken apart by McCroskey.

**{¶30}** Although landlords have a duty under R.C. 5321.04(A)(4) to maintain in good, safe, and working order and condition all heating and ventilation fixtures and

8

appliances, there is no similar duty for homeowners and no requirement for regularly scheduled inspections. Even in a landlord/tenant situation, however, liability will not be imposed unless the landlord had notice of a defective condition. *See Davis v. Tell Realty*, 11th Dist. Portage Nos. 2000-P-0006 and 2000-P-0007, 2001 Ohio App. LEXIS 1124, *9 (Mar. 9, 2001), citing *Burnworth v. Harper*, 109 Ohio App.3d 401 (4th Dist.1996).

**{¶31}** Sorensen relies on a case from the Second District, *Jung v. Davies*, 2d Dist. Montgomery No. 24046, 2011-Ohio-1134, to support his position that the trial court erred here. However, Sorensen's reliance on that case is misplaced. *Jung* involves negligence per se with respect to violations of county and township building and maintenance codes. In our case, there is no violation of any code or statute.

**{¶32}** In light of the foregoing, the trial court did not require Sorensen to establish a statutory duty in order to pursue his negligence claim. The court properly granted summary judgment in favor of DeFranco.

**{¶33}** Sorensen's first assignment of error is without merit.

**{¶34}** In his second assignment of error, Sorensen contends that the trial court erred in granting DeFranco's motion for summary judgment because it failed to analyze the legal status and apply the common law duties of care between the parties.

**{¶35}** In his third assignment of error, Sorensen alleges that the trial court erred in granting summary judgment in favor of DeFranco by holding that a homeowner cannot be charged with actual or constructive notice regarding carbon monoxide emissions within the home.

9

**{¶36}** In his fourth assignment of error, Sorensen maintains that the trial court erred in granting summary judgment despite the presence of genuine issues of material fact regarding whether DeFranco was negligent and breached his common law duties of care owed to Sorensen.

**{¶37}** A review of Sorensen's appellate brief reveals that the arguments contained in his second, third, and fourth assignments of error are interrelated. Thus, for ease of discussion, we will address them together.

**{¶38}** Sorensen claims he was an invitee, or at the very least, a genuine issue of fact exists regarding his legal status. DeFranco argues, on the other hand, that Sorensen was a social guest. DeFranco maintains, however, that regardless of whether Sorensen was an invitee or a social guest, DeFranco, as a homeowner, owed Sorensen no duty to have his furnace inspected and checked for carbon monoxide leakage on a yearly basis and to have a working carbon monoxide detector in his home.

**{¶39}** "An invitee has been defined as 'a business visitor (or business invitee), that is, one rightfully on the premises of another for the purposes in which the possessor of the premises has a beneficial interest.' *Scheibel v. Lipton* (1951), 156 Ohio St. 308, * * * paragraph one of the syllabus. The owner of the premises owes an invitee the duty to exercise ordinary care and to protect him by maintaining the premises in a safe condition. *Provencher* [*v. Ohio Dept. of Transp.*, 49 Ohio St.3d 265,] 266 [(1990)]." (Parallel citation omitted.) *Monaco v. Red Fox Gun Club, Inc.,* 11th Dist. Portage No. 2000-P-0064, 2001 Ohio App. LEXIS 6008, *21-22 (Dec. 28, 2001).

**{¶40}** In *Scheibel,* the Supreme Court of Ohio defined the duty an occupier of land has to a social guest. "A host who invites a social guest to his premises owes the

10

guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Scheibel, supra,* at paragraph three of the syllabus.

**{¶41}** In this case, the trial court did not address the issue of Sorensen's status after holding that the absence of a duty was dispositive of this matter. Based on the facts presented, we determine the court did not commit error by not categorizing Sorensen as an invitee or as a social guest. Even if it did, the judgment would not have changed.

**{¶42}** Sorensen filed a negligence action against DeFranco. The trial court applied the proper common law principles to determine whether Ohio law imposes a duty upon DeFranco, a homeowner, to have his furnace inspected and checked for carbon monoxide leakage on a yearly basis and to have a working carbon monoxide detector. Sorensen was not on DeFranco's property for any business purpose. Thus, he was not an invitee. *See, e.g., Re v. Kessinger*, 12th Dist. Butler No. CA2007-02-044, 2008-Ohio-167, ¶25. Rather, the facts establish that Sorensen was a social guest, as he was house-sitting without compensation for his long-time friend.

**{¶43}** DeFranco's only duty to Sorensen, as a social guest, was to warn him of any dangerous condition of which he was aware. The undisputed facts establish that DeFranco was not aware of any problems with his furnace or with his carbon monoxide

11

detector. Sorensen even conceded that DeFranco had no knowledge that anything was wrong.

**{¶44}** Even if Sorensen were an invitee, there is no evidence that DeFranco had actual or constructive notice of any problems with his furnace leaking carbon monoxide.

**{¶45}** "'Actual notice' is defined as notice 'given directly to, or received personally by, a party. *Black's Law Dictionary*, 1090 (8th Ed.2004). 'Constructive notice' is notice 'arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of.' *Id.* 'Constructive notice,' refers to 'that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge.'" *Swader v. Paramount Property Mgt.,* 12th Dist. Butler No. CA2011-05-084, 2012-Ohio-1477, ¶24, quoting *Cox v. Estate of Wallace*, 12th Dist. Butler No. CA87-06-078, 1987 Ohio App. LEXIS 10358 (Dec. 31, 1987).

**{¶46}** Again, the undisputed facts are as follows: the furnace was installed in 1992; it was checked and inspected; DeFranco did not experience any significant problems with the furnace; he routinely had the air filters replaced twice a year; a new thermostat and a new thermocouple wire were replaced; after the incident, McCroskey, a general handyman, replaced the furnace; a review of the exterior looked okay and it was not in bad shape; it took him an hour to take the furnace apart in order to determine that it had a cracked heat exchanger, the cause of the leak; McCroskey explained that the problem was not detectable by just examining the outside of the furnace, even during a routine inspection by a furnace company; McCroskey stated that a homeowner, like DeFranco, would not have known that his furnace had a cracked heat exchanger without taking the furnace apart; DeFranco had a carbon monoxide detector mounted

on his kitchen wall; the alarm did not sound because his son did not replace the batteries; and DeFranco was not aware that the detector was not working properly until after the incident.

**{¶47}** Thus, the facts reveal that DeFranco was not placed on either actual or constructive notice that he may have had a problem with his furnace leaking carbon monoxide and that his carbon monoxide detector was not working properly before the incident at issue occurred. Regardless of whether Sorensen was an invitee or a social guest, DeFranco did not owe a duty to have his furnace inspected and checked for carbon monoxide leakage on a yearly basis and to have a working carbon monoxide detector.

**{¶48}** Sorensen further claims the trial court "completely discounted" the opinions from his expert, Madden. However, the court's judgment entry reveals that it reviewed and addressed Madden's expert report, outlined his opinions, and even quoted various portions. Madden opined that a duty existed and that DeFranco was negligent. We note, however, that an expert report or testimony does not control a court's determination of whether a duty exists. *Nicholson v. Turner/Cargile*, 107 Ohio App.3d 797, 806 (10th Dist.1995). Rather, the existence of a duty is a question of law for the trial court to decide on a case-by-case basis. *See Reddick, supra,* at ¶33. In this case, the court properly determined that no duty existed.

**{¶49}** Madden's reference to an un-taped flue pipe as a "potential" cause of the carbon monoxide leak does not create a genuine issue of material fact nor does it establish that DeFranco had knowledge that his furnace was leaking carbon monoxide. Madden never saw or inspected the furnace at issue. His report was based on

13

information from McCroskey, who installed a new furnace and scrapped the old one. McCroskey established that the cause of the carbon monoxide leak was due to the cracked heat exchanger, which was acknowledged in Madden's report. The cause of the leak could not be detected by an outside inspection of the furnace. No genuine issue of material fact was created by Madden.

{¶50} The trial court correctly determined that DeFranco, as a homeowner, did not have a duty to have yearly furnace inspections, including carbon monoxide testing, and to have a working carbon monoxide detector in his home. The court properly granted DeFranco's motion for summary judgment.

{¶51} Sorensen's second, third, and fourth assignments of error are without merit.

{¶52} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed. It is ordered that appellant is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

14