Lieb et. al. v. C-V Oil Co., Inc., No. 193-4-12 Wrcv (Carroll, J. Apr. 3, 2014).

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT**<br>**Windsor Unit** | **CIVIL DIVISION**<br>**Docket No. 193-4-12 Wrcv** |

| | |
|---|---|
| **Helene A. Lieb, individually and as Executrix of the Estate of Edward N. Lappen, Ross Lieb-Lappen, and Mia Lieb-Lappen,**<br>**Plaintiffs.**<br><br> **v.**<br><br>**C-V Oil Company, Inc.,**<br>**Defendant.** | |

### Decision on Motions in Limine

### Background

Plaintiffs sue Defendant for negligence. Plaintiffs allege they hired Defendant to deliver propane to their house and to repair their propane furnace. In 2009, Plaintiffs hired Defendant to modify the ventilation system on the furnace. In 2010, Plaintiffs suffered from carbon monoxide poisoning while sleeping at their house. Edward Lappen died of carbon monoxide poisoning. Plaintiffs later determined the carbon monoxide leak stemmed from the propane furnace. Plaintiffs seek damages for the wrongful death of Edward Lappen and for the injuries suffered by Helene Lieb, Ross Lieb-Lappen, and Mia Lieb-Lappen. Helene Lieb also seeks damages as the surviving spouse in a wrongful death claim. Specifically, she seeks damages for loss of love, society, companionship, and for the related loss of economic services.

On January 15, 2014, Plaintiffs filed two motions in limine. First, Helene Lieb seeks to exclude evidence of her subsequent romantic relationship with Mr. Brenner. Helene Lieb argues this relationship is not relevant to her damages. The evidence indicates Helene Lieb started a romantic relationship with Mr. Brenner approximately one year after the death of Edward Lappen. Helene Lieb and Mr. Brenner now live together but are not married. The record does not indicate if they have current plans to marry. Second, Plaintiffs seek to exclude evidence that they did not have carbon monoxide detectors in the house. Plaintiffs argue evidence of the lack of carbon monoxide detectors is not relevant because they have no duty to install detectors and the lack of detectors did not cause the leak. Alternatively, Plaintiffs seek an instruction that the comparative negligence, if any, cannot be imputed on the entire Lieb-Lappen family.

On January 30, 2014, Defendant opposed both motions. Defendant argues it should be allowed to offer evidence of Helene Lieb's new romantic relationship because the relationship is relevant to show the extent of her damages as a surviving spouse. Defendant asserts it should be able to offer evidence that Plaintiffs did not install carbon monoxide detectors because Plaintiffs had a common law duty to exercise reasonable care. Further, the jury should decide whether not

installing carbon monoxide detectors violated the duty of reasonable care. Defendant believes any ruling about imputation is premature.

## Evidence of Helene Lieb's Subsequent Romantic Relationship (MPR 3)

The first issue is whether Defendant may introduce evidence of Helene Lieb's subsequent relationship with Mr. Brenner. Under the Wrongful Death Act, a spouse may recover for the "pecuniary injuries resulting from" the death of the spouse. 14 V.S.A. § 1492(b). Pecuniary interests include emotional losses, such as the loss of love and the loss of companionship. *See Dubaniewicz v. Houman*, 2006 VT 99, ¶¶ 6–7, 180 Vt. 367 (quoting *Mobbs v. Cent. Vt. Ry.*, 150 Vt. 311, 316 (1988)).

The Vermont Supreme Court has not ruled on whether a defendant may offer evidence of a subsequent romantic relationship to suggest a spouse suffered less damages in a wrongful death claim. *See Johnson v. Fletcher Allen Health Care*, No. S 1508-08 CnC, 2012 WL 3064511 (Vt. Super. Ct. Jan. 26, 2012) (Crawford, J.). *Mears v. Colvin* is the closest case from the Vermont Supreme Court. *See* 171 Vt. 655, (2001). In *Mears*, the victim died of smoke inhalation and carbon monoxide poisoning. *Id.* at 656. The victim's wife claimed damages for loss of companionship. *See id.* The defense introduced evidence that the wife had a lesbian affair prior to the victim's death. *Id.* at 656–57. The Vermont Supreme Court reversed. The Court noted "evidence of an extramarital affair may be admissible to rebut or discredit a claim that the decedent's death deprived the surviving spouse of a faithful, loving companion." *Id.* at 658. However, the Court determined the trial court erred because the defense's focus on the homosexual nature was an improper appeal to "homophobic prejudices." *Id.*

More recently, Judge Crawford evaluated whether to admit evidence of remarriage in a wrongful death claim. *See Johnson*, 2012 WL 3064511. In *Johnson*, the plaintiff claimed economic losses of $650,000 for the economic services and lost companionship of her husband. *Id.* Judge Crawford noted the majority approach is evidence of remarriage is irrelevant to claims for wrongful death. *Id.* (citing *Estate of Spinoza v. Int'l Harvester Co.*, 621 F.2d 1154 (1st Cir. 1980); Speiser, S., *Recovery for Wrongful Death and Injury,* Clark, Boardman, Callaghan 1991, § 6.12, p. 33 (3rd Ed.)). Other states allow evidence of remarriage when a plaintiff raises the issue of the economic value of the lost services. *See Johnson*, 2012 WL 3064511 (citing *Pena v. Northeast Ohio Emergency Affiliates,* 670 N.E. 2d 268 (Ohio Ct. App. 1995).

Judge Crawford reasoned the emotional loss occurs at the time of death. *See Johnson*, 2012 WL 3064511. Although remarriage may make the surviving spouse happier, the new partner cannot replace a deceased spouse. *See id.* However, to the extent a plaintiff seeks monetary damages for lost services, the evidence of a new romantic relationship was relevant because the new partner may preform many of the same services as the deceased spouse. *See id.* Judge Crawford allowed plaintiff to choose between either withdrawing her claims for economic services after her remarriage or allowing in evidence of remarriage. *Id.*

This Court finds Judge Crawford's reasoning persuasive. Evidence of a new romantic relationship is not relevant to show decreased emotional damages. *See id.* Moreover, this case does not involve an extramarital affair, which might be relevant to show a lack of affection

between former spouses. *See Mears*, 171 Vt. at 658. The evidence of a new romantic partner does not diminish the emotional loss Helene Lieb sustained and Mr. Brenner cannot emotionally replace Edward Lappan. Therefore, the Court will exclude the evidence of a new relationship if offered to show lack of emotional loss.

On the other hand, Helene Lieb also claims economic damages for the loss of Edward Lappan. At this point, the Court is not sure what evidence Helene Lieb will offer to show economic damages. To the extent Helene Lieb intends to claim damages from the lost household chores and similar activities, her relationship with Mr. Brenner is likely relevant. The choice of claims and evidence is a strategic decision that the Court leaves to Helene Lieb. *See Johnson*, 2012 WL 3064511. Helene Lieb should clarify, with opposing counsel, what evidence she intends to offer before the start of trial. *See id.*

## Common Law Duty to Install Carbon Monoxide Detectors (MPR 2)

The Court next considers whether Defendants may offer evidence that Plaintiffs failed to install carbon monoxide detectors. Evidence of carbon monoxide detectors is only relevant to show comparative fault if Plaintiffs had a duty to install carbon monoxide detectors. *See* V.R.E. 402. The parties do not dispute that Plaintiffs' home is not required by statute to have carbon monoxide detectors because it was built before 2005. *See* 9 V.S.A. § 2882(b),(c). Therefore, Defendant claims Plaintiffs had a common law duty to install carbon monoxide detectors. Vermont has not addressed whether there is a common law duty to install carbon monoxide detectors, or even if there is a common law duty to install smoke detectors. Under the restatement,

> A person acts negligently if the person does not exercise reasonable care under all the circumstances. Primary factors to consider in ascertaining whether the person's conduct lacks reasonable care are the foreseeable likelihood that the person's conduct will result in harm, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm.

Restatement (Third) of Torts: Phys. & Emot. Harm § 3 (2010).

The Court starts by reviewing the limited number of cases addressing whether a party has a duty to install carbon monoxide detectors. In *Sorsen v. DeFranco*, the Court of Appeals of Ohio determined a landlord did not owe a tenant a common law duty to have carbon monoxide detectors installed. *See* --- N.E.2d ----, 2013-Ohio-5829, ¶¶ 27–29 (Ohio Ct. App. 2013). To have a duty at common law, the injury must be foreseeable. *Id.* ¶ 27. Foreseeability, in turn, focuses on whether a reasonably prudent person would have anticipated a harm that would likely result from failing to take a particular act. *Id.* The Court then concluded there is no duty to have carbon monoxide detectors because the harm is not reasonably foreseeable. *See id.* ¶ 29. In a similar dispute between a landlord and a tenant, the Connecticut Superior Court also held "there is no common law duty on a landlord to install carbon monoxide detectors." *Iannocone v. Vigliotti*, 47 Conn. L. Rptr. 243, *3 (Conn. Super. Ct. 2009) *vacated on other grounds by Iannocone v. Vigliotti*, No. CV075012750, 2009 WL 2783625 (Conn. Super. Ct. July 31, 2009).

Analogously, other jurisdictions hold there is no common law duty to install smoke detectors. For example, Maryland held that owners of single family homes did not have a common law duty to install smoke detectors. *See Salvatore v. Cunningham*, 505 A.2d 102, 106 (Md. 1986). The Maryland legislature established a statute that required smoke detectors but exempted single family homes. *Id.* The court reasoned the enactment of the statute abolished any common law requirement for owners of single family homes to install smoke detectors. *Id.* The Massachusetts Appeals Court also acknowledged the duty to install smoke detectors was exclusively controlled by statute, not common law, and could not be applied in a community that did not accept the statute. *See Bennett v. DeBonis*, 528 N.E.2d 150, 150 (Mass. Ct. App. 1988) *cert. denied* 403 Mass. 1105; *see also Epps v. Ayer*, 859 S.W.2d 107, 109 (Tex. Ct. App. 1993) (acknowledging that there was no common law duty to install smoke alarms).

In this case, Plaintiffs did not have a common law duty to install carbon monoxide detectors. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 3. The limited number of cases discussing carbon monoxide indicate that the harm is not reasonably foreseeable. *See Sorsen*, 2013-Ohio-5829, ¶¶ 27–29. This Court agrees. Carbon monoxide poisoning is a rare occurrence. Additionally, Plaintiffs had used the home for over ten years without any issue. Plaintiffs had the propane furnace regularly filled and serviced. Plaintiffs had no reason to suspect their house would become flooded with carbon monoxide and, therefore, they had no duty to install carbon monoxide detectors. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 3. The reasoning of the Courts in Maryland, Massachusetts, and Texas also suggests there is no common law duty to install detectors in the class of building used by plaintiffs. *See Bennett*, 528 N.E.2d at 150; *Salvatore*, 505 A.2d at 106; *Epps*, 859 S.W.2d at 109.

Without a duty to install carbon monoxide detectors, Plaintiffs could not have been comparatively negligent and therefore the evidence of failure to install the detectors is not relevant. *See* V.R.E. 402. Based upon this finding, the Court does not reach the question of whether the comparative negligence could be imputed to the entire family.

## Order

The Court ***grants in part*** and ***denies in part*** Plaintiff's motion in limine to exclude evidence of Helene Lieb's subsequent romantic relationship (MPR 3). The relationship is not relevant to show loss of companionship, but might be relevant to the extent Helene Lieb attempts to claim economic damages for the services Edward Lappan would have performed. The Court ***grants*** Plaintiff's motion in limine to exclude evidence of carbon monoxide detectors (MPR 2).

Dated at Hartford, Vermont on April 3, 2014.

Karen R. Carroll
Superior Court Judge